NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-29

SUCCESSION OF GEORGE D. CARPENTER

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 36,745
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

AFFIRMED.

**Winfield E. Little, Jr.**
**Little Law Firm**
**Post Ofice Box 3759**
**Lake Charles, Louisiana  70602**
**(337) 430-0907**
**COUNSEL FOR  APPELLANTS:**
    **Edith McKinney**
    **Gail Landry**
    **Christine Bertrand**
    **Karrie Neely**
    **Vickie Boulet**
    **Hollie Neely**
    **James Neely, Jr.**

**Thad Minaldi**
**Attorney at Law**
**500 Kirby Street, Suite 201**
**Lake Charles, Louisiana  70601**
**(337) 433-1386**
**COUNSEL FOR APPELLEE:**
    **Crystal Marcantel Von Rosenberg**

**CONERY, Judge.**

This case involves a determination by the trial court that a home purchased during the marriage of a couple was part of the couple's community of acquets and gains and not the separate property of one of the spouses. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

George Carpenter and Lola Carpenter were married in 1974, and remained married for twenty-five years until George's death in 1998. The couple lived under a community property regime. Approximately twelve years before George's death, they bought property and built and furnished a home located in Lake Charles, Louisiana, which will be referred to in this opinion as the Home. Lola died on December 22, 2011, while still living in the Home. This was the second marriage for both parties and each had children born of the first marriage.

The Home is at the center of this dispute between Lola's daughter and George's children and one group of grandchildren. The litigants include Lola's only child, Crystal Marcantel Von Rosenberg (Crystal), who is presently serving as the independent executrix of Lola's estate, opened under Docket # 52144 "B" in the Fourteenth Judicial District Court. Crystal is also serving as co-administrator of George's estate, opened under Docket # 36,745, also in the Fourteenth Judicial District Court, having replaced Lola, the original executrix. George's daughter, Edith Carpenter McKinney (Edith), is serving as co-administrator with Crystal of George's estate.[1]

---

[1] Edith represents the interests of George's other heirs/legatees, which include his daughter Gail Carpenter Landry, and the descendants of George's predeceased daughter, Jenell

On August 13, 1998, George's succession proceeding was opened with the filing of his Last Will and Testament dated March 2, 1992, and Codicil dated July 12, 1993. Lola was recognized as executrix of George's succession. While acting as executrix of George's succession, Lola filed the Preliminary Listing of Distribution of Possession for the Succession of George D. Carpenter. The Home was listed and Lola sought to "be recognized as usufructuary and sent into possession of a usufruct for life" over the Home and furnishings. Such a preliminary listing was apparently required to file the Louisiana Inheritance and Estate Transfer Tax Return in accordance with La.R.S. 47:2405.[2] The trial court signed an order for Lola's attorney to file the return, which stated:

> IT IS HEREBY ORDERED that Lola M. Carpenter, Executrix of the Succession of George D. Carpenter, is authorized in accordance with La.R.S. 47:2425 to file the Louisiana inheritance tax return by providing the preliminary listing of the distribution of possession attached to the petition in these proceedings in lieu of the petition of possession.

Edith claims that during the succession proceeding, Lola, as executrix, also signed a Sworn Detailed Descriptive List listing the home as George's separate property. It is undisputed that the original Sworn Detailed Descriptive List at issue and allegedly signed by Lola was never filed in George's succession proceeding. For whatever reason, the attorney handling George's succession proceeding failed to file the document into the record of George's succession. The Sworn Detailed Descriptive List, like the Louisiana Inheritance and Estate Tax Return, was found after Lola's death in her former attorney's closed files.

Carpenter Neely, namely Christine Margaret Bertrand, Karrie Lois Neely, Vickie Annette Boulet, Hollie Bernice Neely, and James Edward Neely, Jr., George's grandchildren.

[2]Louisiana Revised Statute 47: 2425 was repealed effective January 1, 2010.

2

There has been no final judgment of possession. The sale of the Home was authorized in an order of the court dated December 19, 2012, in George's succession proceeding. The Home was sold by a "CASH WARRENTY [sic] DEED" on April 21, 2014. The document listed as **"vendor"** the "Succession of George D. Carpenter," and the "Succession of Lola Mary Carpenter[.]" Counsel stipulated prior to trial that the proceeds from the sale of the Home, its furnishings, and other miscellaneous amounts were deposited in the trust account of Crystal's counsel pending final resolution of the issue of designation of the Home and furnishings as community or separate property, now on appeal before this court.

On June 29, 2012, following Lola's death, Crystal filed notice in George's succession proceedings to replace her mother Lola as executrix. In 2014, as executrix of Lola's succession, Crystal initially filed, in George's succession, a Petition for Declaratory Judgment to determine the nature of the Home acquired during the marriage of Lola and George. Edith responded by filing a copy of the so-called Sworn Detailed Descriptive List, allegedly signed by Lola, and found in her then-attorney's office file. A copy of the Sworn Detailed Descriptive List was filed into evidence over objection of counsel for Crystal, as an exhibit[3] in a hearing held on October 2, 2014, to determine what debts were actually owed between George's and Lola's estates. This document listed the Home as George's separate property.

Crystal responded to the filing of the copy of the Sworn Detailed Descriptive List with a motion objecting to the filing. She sought to traverse the Sworn

---

[3]The Sworn Detailed Descriptive List was admitted into evidence as "McKinney 1 – In Globo-Sworn Detailed Descriptive List of Property[.]" Crystal objected to the filing of a copy of the Sworn Detailed Descriptive List on the basis that Edith had offered no evidence of why they were unable to produce the original, pursuant to La.Code Evid. arts. 1002 and 1004.

Detailed Descriptive List pursuant to La.Civ.Code art. 3137, which allows an interested party to traverse a descriptive list at any time as authorized by La.Civ.Code art. 3136. A sworn detailed descriptive list may be filed in lieu of an inventory in a succession proceeding, and is prima facie proof of all matters contained therein, unless traversed. However, the sworn detailed descriptive list must be filed in the succession proceeding. It is undisputed that the Sworn Detailed Descriptive List allegedly signed by Lola, as executrix of George's succession, was never filed in the record of George's succession proceeding.

Edith responded to Crystal's filing with an answer and motion and order for a rule to show cause to determine whether the Home was part of the community between George and Lola or George's separate property.

The trial court held a hearing on all motions filed. At the hearing, the parties filed written stipulations and presented oral stipulations and documentary evidence, all of which were entered into the record. Arguments for both sides were presented, and the trial court took the matter under advisement. The trial court issued its written reasons for ruling on October 6, 2015, and found that the Home was part of the community property of George and Lola and not the separate property of George. A judgment was entered on October 28, 2015, from which a timely appeal was filed by Edith, as co-administrator of George's estate.

## ASSIGNMENTS OF ERROR

On appeal, Edith alleges the following as errors:

### ASSIGNMENT OF ERROR NUMBER ONE

THE TRIAL COURT ERRED IN RULING THAT THE SWORN DETAILED DESCRIPTIVE LIST AND LA INHERITANCE AND ESTATE TRANSFER TAX RETURN

SIGNED BY THE SURVIVING SPOUSE/EXECUTRIX OF DECEDENT'S ESTATE WAS <u>NOT</u> A JUDICIAL CONFESSION THAT THE SUBJECT PROPERTY WAS PART OF HIS SEPARATE ESTATE AND DID <u>NOT</u> COMPRISE THE PROPERTY OF THE COMMUNITY OF ACQUETS AND GAINS BETWEEN THE DECEDENT AND HIS SURVIVING SPOUSE.

## <u>ASSIGNMENT OF ERROR NUMBER TWO</u>

THE TRIAL COURT ERRED IN RULING THAT THE SUBJECT PROPERTY WAS COMMUNITY PROPERTY FAILING TO RECOGNIZE THAT LA. CIVIL CODE ARTICLE 2340 CREATES A "REBUTTABLE PRESUMPTION OF COMMUNITY PROPERTY" WHICH CAN BE REBUTTED BY THE PARTIES.

## LAW AND DISCUSSION

### *Standard of Review*

A trial court's determination of the nature of property as either community or separate property is a factual determination which is reviewed on appeal under the manifest error standard of review. *See Young v. Young*, 06-77 (La.App. 3 Cir. 5/31/06), 931 So.2d 541.

The Louisiana Supreme Court in the recent case of *Snider v. Louisiana Medical Mutual Insurance Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So.3d 319, 323 reiterated the applicable standard of review and stated:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). This test dictates that a reviewing court must do more than simply review the record for some evidence that may controvert the trial court ruling. Rather, it requires a review of the entire record to determine whether manifest error has occurred. Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. *Clay v. Our Lady of Lourdes Regional Medical Center*, 11-1797 (La. 5/8/12), 93 So.3d 536, 543. The appellate court must not reweigh the evidence

or substitute its own factual findings because it would have decided the case differently. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. *Bellard v. American Central Ins. Co.*, 07-1335 (La.4/18/08), 980 So.2d 654, 672.

Louisiana Civil Code Article 2338 discusses what comprises community property and provides:

> The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.

Louisiana Civil Code Article 2341 discusses what comprises separate property and provides:

> The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.

Louisiana Civil Code Article 2340 provides that "[t]hings in the possession of a spouse during the existence of a regime of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." Therefore, the party seeking to rebut the presumption of community bears the

6

burden of proof and is required to show by a preponderance of the evidence the separate nature of property. *See Talbot v. Talbot*, 03-814 (La. 12/12/03), 864 So.2d 590.

Louisiana Civil Code Article 1853 governs judicial confessions and provides: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

### *Assignment of Error One*

In the first assignment of error, Edith urges that the Sworn Detailed Descriptive List and the Louisiana Inheritance and Estate Tax Transfer Tax Return allegedly signed by Lola in connection with George's succession constitute a judicial confession that the Home was George's separate property. The trial court found that on April 8, 1999, when Lola signed the Sworn Detailed Descriptive List and the Louisiana Inheritance and Estate Tax Transfer Tax Return, she believed the Home to be George's separate property.

However, the trial court further found, and it is undisputed, that the documents relied on by Edith, the Sworn Detailed Descriptive List and the Louisiana Inheritance and Estate Tax Transfer Tax Return, for whatever reason, were never filed by Lola's counsel in the court record of George's succession proceeding.

Counsel for Edith argued both in the brief on appeal and at oral argument that the former attorney's closed files also contained a "Louisiana Inheritance and Estate Transfer Tax Receipt No. 308739[,]" dated April 14, 1999, from the State of Louisiana Department of Revenue, Inheritance Tax Section. The receipt indicates,

7

in pertinent part, a "Formal Inventory or Sworn Descriptive List" was submitted with the filing of the Louisiana Inheritance and Estate Tax Transfer Tax Return. Edith claims that the "filing" of the Sworn Detailed Descriptive List with the Department of Revenue is tantamount to the filing of the document in George's succession proceeding and is considered a judicial admission that the Home was George's separate property. The receipt from the State Department of Revenue indicated a "Sworn Descriptive List" had been filed with the State and that no state taxes were owed on George's estate.

However, the record reflects that Edith did not raise or argue in the trial court the issue that filing of the Sworn Detailed Descriptive List with the Department of Revenue was tantamount to filing in the actual succession proceeding, and, as such, was a judicial confession. Therefore, without submission to the trial court for review, we are precluded from consideration of that specific argument under Uniform Rules—Courts of Appeal, Rule 1-3, which provides, in pertinent part: "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise."

The trial court did find that although a copy of the Sworn Detailed Descriptive List had been filed in the proceeding involving the debts owed between George and Lola's estates, it had not been filed in George's actual succession proceeding and is " now in the record only as a result of an order of this Court when presented by counsel-not as a result of a filing by Lola."

The trial court then relied on the case of *Goines v. Goines*, 08-42 (La.App. 5 Cir. 6/19/08), 989 So.2d 794, as support for its conclusion that Lola was required to file the Sworn Detailed Descriptive List in George's succession proceeding in

8

order for it to constitute a judicial confession that the Home was George's separate property. In *Goines*, Mr. Goines attempted to traverse the detailed descriptive list seeking to prove that the family home was his separate property. However, he had previously filed in the same proceedings an affidavit in connection with the refinancing of the family home, designating it as community property, and a detailed descriptive list, stating the family home was community property and listing the family home as a donation of his separate property. The fifth circuit reversed the trial court and found that the statements made by Mr. Goines in the documents filed in the proceedings, which included the affidavit and his detailed descriptive list, *constituted judicial confessions* that the family home was community property, and that there was no error of fact for any of the documents cited to be revoked.

In this case, however, it is undisputed that the original Sworn Detailed Descriptive List, was not filed by Lola in George's succession proceeding. We affirm the trial court's ruling that the Sworn Detailed Descriptive List in question does not constitute a judicial confession as defined in La.Civ.Code art. 1853.

*Assignment of Error Two*

Edith contends in Assignment of Error Two that the trial court erred in failing to apply the "rebuttable presumption of La.Civ.Code art. 2340[,]" which provides: "Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property."

Documents submitted into evidence at the beginning of the trial by Crystal, and cited in both oral argument and briefing to this court, provide that during the purchase of the property for the Home, each conveyance stated as follows:

9

"George D. Carpenter, married to and living with Lola Carpenter, born Frieu." The cash sale of the couple's former home provided, "GEORGE D. CARPENTER AND LOLA CARPENTER, BORN FRIEU, HUSBAND AND WIFE," as the "SELLERS." The collateral mortgage executed by George on August 18, 1987, also stated, "GEORGE D. CARPENTER, MARRIED TO AND LIVING WITH LOLA M. CARPENTER, BORN FRIEU-RESIDENTS OF 2226 – 22ND STREET, LAKE CHARLES, CALCASIEU, PARISH, LA."

The trial court reviewed all the evidence presented, and though not a "judicial confession," even considered the Sworn Detailed Descriptive List as part of the evidence used by Edith to attempt to rebut the presumption that the Home was George's separate property. In its written reasons, the trial court determined that based on La.Civ.Code arts. 2338 and 2341, which define both community property and separate property respectively, prior to George's death on July 25, 1998, the Home was part of the couple's community of acquets and gains:

> The facts furnished to the Court reflect that the property was purchased during the marriage, document(s) acknowledge the marital relationship between George and Lola, make [sic] no specific or implied separateness of ownership as to George and no reference is made to the status of the marital property relationship, either as separate of a community of acquets or gains. The sole document that is alleged suggests otherwise is a mortgage executed by George on August 18, 1987 that addresses George's undivided interest in the family home – the property. However, that document does not even delineate what that "individual interest" is, nor whether it(s) his separate property or a portion of the community property interest in that home.

Further, based on the clear language of Article One of George's Last Will and Testament, the trial court found that George included a special bequest to Lola which puts to rest the designation of the Home as George's separate property. The final sentence of Article One of George's Last Will and Testament provides

10

emphasis added): "Further, as an additional legacy to her, I relieve my wife of any obligation to reimburse my separate estate for separate property advanced *to the community for acquisition and construction of the residence or any furnishings*."

Based on the provisions of Article One of George's Last Will and Testament, at the time it was executed, George believed that a portion of his separate property had been used "for the acquisition and construction" of the Home and its furnishings. However, as found by the trial court, the issue of the nature of the Home was resolved with George's "special bequest" to Lola as he clearly identified the Home and furnishings as community property.

After considering all the evidence in the record, we find no manifest error in the trial court's ruling that the Home was community property.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment of October 28, 2015, in its entirety which found that the former family residence, and furnishings therein, of George D. Carpenter and Lola Marcantel Carpenter, located at 2226 22nd Street, Lake Charles, Louisiana 70601 are part of the community of acquets and gains that existed between George D. Carpenter and Lola Marcantel Carpenter. We also affirm the trial court's division of the proceeds of the sale of the family residence and furnishings. All costs of this appeal are assessed to Edith Carpenter McKinney, Gail Carpenter Landry, Christine Margaret Bertrand, Karrie Lois Neely, Vickie Annette Boulet, Hollie Bernice Neely, and James Edward Neely, Jr. in the proportion of their ownership of the property.

**AFFIRMED**.

This opinion is **NOT DESIGNATED FOR PUBLICATION**. Uniform Rules—Courts of Appeal, Rule 2–16.3

11